## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>JUDITH B. KERSTEN,<br><br>      Debtor. | CASE NO. 24-53397-JRS<br><br>CHAPTER 7 |
| PACES FUNDING, LLC,<br><br>      Movant,<br><br>vs.<br><br>JUDITH B. KERSTEN and<br>JASON L. PETTIE, Chapter 7 Trustee,<br><br>      Respondents. | **CONTESTED MATTER** |

### NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Movant has filed a **MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY** and related papers with the Court seeking an **Order Granting In Rem Relief from the Automatic Stay**.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY** at **9:00 A.M.** on **October 22, 2024** in Courtroom **1404**, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the

pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: September 18, 2024

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

/s/ Caitlyn Powers
Caitlyn Powers
Georgia Bar No. 856354
**Counsel for Movant**

Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
cpowers@rlkglaw.com
(404) 584-1238 Telephone

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 24-53397-JRS |
| JUDITH B. KERSTEN, | CHAPTER 7 |
| Debtor. | |
| PACES FUNDING, LLC, | |
| Movant, | |
| vs. | **CONTESTED MATTER** |
| JUDITH B. KERSTEN and<br>S. GREGORY HAYS, Chapter 7 Trustee, | |
| Respondents. | |

---

**MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY**

---

Paces Funding, LLC ("**Movant**" or "**Paces**") files this Motion for *In Rem* Relief from the Automatic Stay to, among other things, allow it to proceed with (i) executing and recording a deed under power of sale and (iii) if necessary, initiating a dispossessory action against Debtor Judith Kersten ("**Debtor**").   In support of this Motion, Movant respectfully shows this Court the following:

1.     This is a Motion under Section 362(d)(1) of the Bankruptcy Code for relief from the stay for all purposes allowed by law, including, but not limited to, the right to execute and record a deed under power from the foreclosure sale cried on April 2, 2024, and dispossess Debtor from such real property.

2.     In connection with a loan for the real property located at 924 Peachtree Battle Ave., Atlanta, Georgia 30327 (the "**Property**"), the Debtor Judith Kersten (the "**Debtor**") executed a

Promissory Note (the "**Note**") in favor of Movant in the original principal amount of $1,140,000.00.  The Debtor further executed a Deed to Secure Debt and Security Agreement (the "**Security Deed**") in favor of Movant for the same amount, which is recorded at Deed Book 66178, Page 63, Fulton County, Georgia records.  A true and correct copy of the Security deed is attached hereto as Exhibit "A" and incorporated herein by reference.[1]

3.       The maturity date under the Note was September 9, 2023 and the total payoff amount as of September 30, 2024 is as follows:

| | |
|---|---|
| Principal: | $1,140,000.00 |
| Interest through 08/30/2024: | $311,089.24 |
| Late Fees | $21,945.00 |
| Tax Escrow | ($1,000.00) |
| Construction Escrow | ($153,200.00) |
| City of Atlanta 2023 Taxes | $531.95 |
| City of Atlanta Solid Waste Taxes | $3,064.34 |
| Fee to purchase Fi.Fa.s | $3,006.17 |
| Force-Placed Insurance | $4,705.00 |
| Statutory Attorney's Fees | $171,000.00 |
| | |
| Total Payoff: | $1,512,566.24 |

Interest continues to accrue at a rate of $506.66 per diem.

4.       Debtor previously filed a prior Chapter 13 bankruptcy case on July 3, 2023, Case No. 23-56302, (the "**First Bankruptcy**") on the eve of a non-judicial foreclosure sale.

5.       In the First Bankruptcy, the U.S. Trustee filed a Motion to Dismiss, which was granted on October 4, 2023 for failure to comply with direction from the Court.

---

[1] The Trustee (defined below) has indicated its position that the Security Deed is invalid because the Debtor's name is listed as Judy Kersten instead of Judith Kersten in the Security Deed. This position is untenable as the Security Deed is clear as to the identity of the Grantor. "A 'mistake in setting out the name of a grantor is not fatal where his or her identity is apparent.'" *Wells Fargo Bank, N.A. v. Richardson*, No. 6883-MA, 2013 Del. Ch. LEXIS 210, at *10-13 (Ch. July 31, 2013) (holding that deed was sufficient to convey title where deed failed to include portion of grantors' surname). Nothing in the Georgia statutory code requires that a deed conveying title include a grantor's full name, and the Debtor is fully identifiable by the name set forth in the Security Deed. *See Middlebrooks v. City of Macon-Bibb Cty.*, No. 5:23-cv-00083-TES, 2024 U.S. Dist. LEXIS 23621 (M.D. Ga. Feb. 12, 2024) (holding that nothing required a grantor to sign their full name for a deed to be effective in conveying title).

6.      Accordingly, Movant scheduled another non-judicial foreclosure sale for December 5, 2023. Again, the Debtor filed another petition for relief under Chapter 13, Case No. 23-62013, (the "**Second Bankruptcy**") on the eve of foreclosure.

7.      In the Second Bankruptcy, Movant obtained relief from the automatic stay to proceed with a non-judicial foreclosure sale on February 23, 2024.

8.      Movant scheduled a third non-judicial foreclosure sale on April 2, 2024.

9.      Debtor filed the instant bankruptcy case under Chapter 13 of the Bankruptcy Code on April 1, 2024; however, because this case was the Debtor's third filing within twelve months, no automatic stay was imposed by the filing.

10.     Therefore, the Debtor filed an Emergency Motion to Impose Stay [Doc. 6], which was heard the morning of the foreclosure sale on April 2, 2024 (the "**Foreclosure Sale**"). The Court issued an order permitting Movant to cry the Foreclosure Sale that same day but imposed the stay to otherwise prevent Movant from recording any deed under power of sale or taking any other actions to complete or consummate the Foreclosure Sale. Movant was the winning bidder at the Foreclosure Sale.

11.     Debtor filed a Motion to Sell Real Property on April 5, 2024 [Doc. 18], proposing to sell the Property for a purchase price of $1,475,000.00. The Court entered an order approving the proposed sale with provisions that should the proposed sale either terminate or fail to close, the instant case would be converted from Chapter 13 to Chapter 7. The Court further ordered that a status conference be held on April 16, 2024 regarding the status of the proposed sale. At the status conference, counsel for the Debtor reported that the originally proposed purchaser had fallen through, but that she had another possible buyer for the property at $1,400,000.00. The Debtor presented no substantiating evidence for this second possible buyer or contract.

12.     The Debtor was unable to close on any proposed sale and ultimately voluntarily requested the case be converted to Chapter 7 on May 1, 2024 [Doc. 31] as directed by the Court, and the case was converted on May 3, 2024.

13.     S. Gregory Hays is the duly appointed and qualified chapter 7 trustee (the "**Trustee**") in this chapter 7 case.

14.     As a result of maturity of the loan and non-payment, Debtor is in default of the Note and Security Deed and Movant desires to exercise its state law rights, to record the deed under power of sale from the Foreclosure Sale and take any other actions necessary to consummate such sale, and to exercise its state law rights to dispossess Debtor and her personal property from the Property.

15.     Movant is not adequately protected and hereby shows that there is cause for relief from the stay, as (i) the Debtor has failed to tender amounts due under the Note and Security Deed, (ii) the Debtor continues to be in default of the Note and Security Deed, (iii) the Movant lacks adequate protection for its interest in the Property as discussed above as payments have not been made, and (iv) the Movant is unable to consummate the Foreclosure Sale of the Property or dispossess the Debtor from the Property because of the stay.  11 U.S.C. § 362(d)(1).

16.     Relief from the stay is also appropriate, because, after accounting for any sales commissions to sell the Property, the Debtor has minimal, if any, equity in the Property and the Property is not necessary to an effective reorganization, as it is not the Debtor's principal residence. 11 U.S.C. § 362(d)(2)(A)-(B). Paces contends the Property is worth between $1,250,000.00 and $1,330,000.00. Even assuming a value of $1,475,000.00 based on the prior proposed sale, Movant's claim already exceeds the total value of the Property, without considering the second

mortgage on the Property the balance of which the Debtor testified was approximately $42,000.00,

broker commissions, and other closing costs.

17.     In addition, 11 U.S.C. § 362(d)(4), provides that the Court may enter *in rem* stay

relief if a bankruptcy filing was part of a scheme to delay, hinder, or defraud creditors that involved

"multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B). Paces asserts

this is the third bankruptcy filing affecting this Property within twelve months, and Paces wishes

to avoid any future gamesmanship of transferring the Property to another party before it is able to

execute and record the deed under power of sale and then have that party file another bankruptcy.

At this juncture, it is time to give up on any potential profit that could be made, and any potential

recovery would be required to go toward the Debtor's unsecured creditors in this case. Again,

given the accruing post-petition interest, sales commissions, and attorney's fees that continue to

accrue, there is almost no chance of selling the Property for an amount above the amount owed to

Paces.

18.     The Court may also exercise authority under 11 U.S.C. § 105(a) "to enter orders,

when necessary or appropriate, to prevent the harm arising from abusive filings." *In re Traub*,

2014 Bankr. LEXIS 2028 at *11 (Bankr. S.D. Ga. May 5, 2014) (citations omitted).

19.     As discussed above, the Debtor has filed her third bankruptcy case and each

bankruptcy filing has been on the eve of a scheduled non-judicial foreclosure sale. The Property

is NOT the Debtor's residence as this loan was made for purposes of the Debtor purchasing and

rehabilitating the Property for commercial purposes.

20.     Debtor has had the Property listed for sale since January 23, 2023. At that time, it

was listed for sale at $1,524,900. Over the past year and eight months, Debtor has continued to

reduce the listing price, with the lowest price listed being $1,392,000. Given the Debtor's long

history of attempts to sell the Property without success, including several failed sales during the instant case, the Property is of no benefit to the estate and the Court should grant the relief requested in this Motion.

**WHEREFORE**, the Movant requests for the following relief:

(1)  an Order lifting and terminating the stay as to Movant, authorizing Movant to, among other things, to consummate the Foreclosure Sale of the Property, to execute and record the deed under power of sale, and if necessary, to exercise its state law rights to take possession of the Property and remove any personal property from the Property;

(2)  an Order that the relief be *in rem* against the Property pursuant to 11 U.S.C. § 362(d)(4);

(3)  that the Court waive the 14-day stay of Bankruptcy Rule 4001(a)(3); and

(4)  for such other and further relief as the Court deems just and equitable.

[*Signature of counsel on following page*]

Dated: September 18, 2024          Respectfully submitted,

                                   **ROUNTREE LEITMAN KLEIN & GEER, LLC**


                                   /s/ Caitlyn Powers
                                   Caitlyn Powers
                                   Georgia Bar No. 856354
                                   **Counsel for Movant**

Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
cpowers@rlkglaw.com
(404) 584-1238 Telephone

7

# EXHIBIT A

**[Security Deed]**

TAX ID: 17-0184-0002-053-9

AFTER RECORDING PLEASE RETURN TO:

BAGWELL & ASSOCIATES, PC
2931 PIEDMONT ROAD, SUITE C
ATLANTA, GEORGIA 30305



## DEED TO SECURE DEBT AND SECURITY AGREEMENT

### (Short term – intangible tax not due)

STATE OF GEORGIA

COUNTY OF FULTON

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT ("Deed"), is made **September 9, 2022** by and between

#### Judy Kersten

Whose mailing address is **22 Robinson Street, Newnan, Georgia 30263** ("Grantor"), and

#### PACES FUNDING, LLC,

a Georgia limited liability company, whose mailing address is 3015-B PIEDMONT RD, ATLANTA, GA 30305 ("Grantee");

### WITNESSETH THAT

WHEREAS, the Grantor is justly indebted to Grantee in the sum of **$1,140,000.00** in lawful money of the United States of America, and has agreed to pay the same, with interest thereon, according to the terms of a certain promissory note given by Borrower to Grantee to evidence said indebtedness, bearing even date herewith, having a **maturity date of September 9, 2023**, such note, as the same may be amended, renewed, replaced, or extended from time to time, being incorporated herein by this reference (as amended, renewed, replaced, or extended, the "Note");

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Grantor, and in order to secure the payment of the Note and the Secured Indebtedness as defined herein below, Grantor has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey, unto Grantee the following described property, to-wit:

**SUBJECT PROPERTY KNOWN AS: 924 Peachtree Battle Avenue NW, Atlanta, Georgia 30327.**

**AND AS MORE FULLY DESCRIBED IN EXHIBIT "A" HERETO AND INCORPORATED HEREIN.**

TOGETHER with all buildings, structures, and other improvements now or hereafter located on said property, or any part and parcel thereof; and

TOGETHER with all rights, title, and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber, and other emblements now or hereafter on said property or above the same or any part or parcel thereof; and

TOGETHER with all and singular the tenements, hereditaments, easements, and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues, and profits thereof; and also all the estate, right, title, interest, claim, and demand whatsoever of Grantor of, in, and to the same and of, in, and to every part and parcel thereof; and

TOGETHER with all fittings and fixtures, whether actually or constructively attached to said property and including all attached machinery, equipment, apparatus, and all trade, domestic, and

ornamental fixtures, appliances, and articles of personal property of every kind and nature whatsoever, now or hereafter located in, upon, or under said property or any part thereof and used or usable in connection with any present or future operation of said property and now owned or hereafter acquired by Grantor (hereinafter collectively called "Equipment") including, but without limiting the generality of the foregoing, all heating, air conditioning, freezing, lighting, laundry, cooking, incinerating, and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; boilers, ranges, furnaces, oil burners, or units thereof; appliances; air-cooling and air conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; dishwashers; attached cabinets; partitions; ducts and compressors; rugs and carpets; mirrors; mantles; draperies; furniture and furnishings; all building materials, supplies, and equipment now or hereafter delivered to said property and intended to be installed therein; all additions to and renewals or replacements of all of the foregoing; and all proceeds and profits of all of the foregoing; and

TOGETHER with any and all rents which are now due or may hereafter become due by reason of the renting or leasing of the property, the improvements thereon, and Equipment; and

TOGETHER with any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in the value of, the property, to the extent of all amounts which may be secured by this deed at the date of receipt of any such award or payment by Grantee and of attorneys' fees and costs as set forth herein, and disbursements incurred by Grantee in connection with the collection of such award or payment.

TO HAVE AND TO HOLD all the aforesaid property, property rights, contract rights, Equipment, and claims (all of which are collectively referred to herein as the "Premises") to the use, benefit, and behoof of Grantee, forever, in FEE SIMPLE.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be expressly provided in Schedule B Section 2 of the lender's title policy issued in connection herewith; and Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

By execution hereof by the Grantor and acceptance hereof by the Grantee, the parties hereto hereby affirmatively state that they intend to create and establish a perpetual or indefinite security interest in favor of Grantee in the Premises conveyed hereby pursuant to Official Code of Georgia Annotated ("O.C.G.A.") § 44-14-80(a)(1) or § 44-14-80(a)(2), as applicable, and agree that title to the Premises conveyed hereby shall not revert to Grantor until the expiration of the longest period of time permitted under whichever of said subsections as shall be applicable to this conveyance, or if later, the date determined in accordance with O.C.G.A. § 44-14-80(b) or § 44-14-80(c), as applicable, if any portion or all of the indebtedness secured hereby is extended or renewed.

This instrument is a deed and security agreement passing legal title pursuant to the laws of the State of Georgia governing conveyances of property to secure debt and security agreements and is not a mortgage.

This deed is made and intended to secure the payment of the indebtedness of Borrower to Grantee evidenced by the Note in accordance with the terms thereof, together with all additional sums advanced and expenses incurred by Grantee for insuring, preserving or otherwise protecting the Premises and its value and any other sums advanced and expenses incurred by Grantee under the terms of this deed (including advances for payment of taxes and assessments on the Premises), and all expenses incident to the collection of the indebtedness secured by this deed (all of which are collectively referred to herein as the "Secured Indebtedness")

Grantor covenants and agrees as follows:

1. Payment of Secured Indebtedness. Grantor, if also Borrower, shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note or any other instrument or document pertaining to said Secured Indebtedness as provided.

2. Taxes and Insurance Premiums. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed, or made against the Premises, this instrument, or the Secured Indebtedness or any interest of Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for title insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall promptly deliver to Grantee receipts showing

payment in full of all of the above items. Upon notification from Grantee, Grantor shall pay to Grantee (together with and in addition to the payments of principal and interest payable under the terms of the Note secured hereby if Grantor also is Borrower), on the installment-paying dates of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents, and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. In the event Grantee has required Grantor to pay to Grantee amounts estimated to be necessary to pay said taxes, assessments, insurance premiums and the like as provided hereinabove, then Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums, and rents next due, and Grantee shall pay said charges up to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall become a debt due by Grantor to Grantee, shall bear interest at the rate of interest specified in the Note from date of advancement, and shall be immediately due and payable to Grantee upon demand by Grantee. Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

### 3. Insurance Requirements; Damage and Destruction

(a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, collapse, explosion, malicious mischief, riot, riot attending a strike, civil commotion, aircraft, vehicles, and smoke and such other hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding 100% of the full insurable value (replacement value) thereof and shall keep the Premises covered by public liability insurance in amounts acceptable to Grantee; all insurance herein provided for shall be in form and written by companies approved by Grantee; and, regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness (whether or not same is then due and payable) in such order of application determined by Grantee in Grantee's sole discretion, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof upon terms and conditions satisfactory to Grantee in Grantee's sole discretion, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b) Not less than ten (10) days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article 3, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by, this, deed, pursuant to the provisions of this Article 3.

4. **Maintenance of Premises/Lease.** (a) Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all restrictive covenants, statutes, ordinances, and requirements of any governmental authority relating to the Premises and the use thereof or any part thereof. Grantor shall promptly repair, restore, replace, or rebuild any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 6 herein. No part of the Premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, equipment or other property, 'now or hereafter conveyed as security by or pursuant to this deed, shall be removed, demolished, or materially altered without the prior written consent of Grantee. Grantor shall



complete, within a reasonable time, and pay for any building, structure, or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof without the express prior written consent of Grantee. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times, and access thereto shall be permitted for that purpose.

(b) Grantor shall not, without the written consent of Grantee, enter into any leases or occupancy agreements affecting the Premises other than residential tenant leases in the ordinary course of business which are subordinate to this deed and which include rents and terms comparable to similar property in the vicinity of the Premises.

5. Further Assurances. Grantor shall execute and deliver (and pay the costs of preparation and recording thereof) to Grantee and to any subsequent holder hereof from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements and assignments, so as to reaffirm, to correct, and to perfect the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this deed and extensions or modifications thereof.

6. Condemnation. Notwithstanding any taking of any property herein conveyed or agreed to be conveyed, by eminent domain, alteration of the grade of any street, or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, Borrower shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alterations, injury, or decrease in value of the Premises, as hereinafter set forth, shall be deemed 'to take effect only on the date of such receipt; and said award or payment may, in the sole discretion of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged, or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If, prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and of the reasonable attorneys' fees, costs, and disbursements incurred by Grantee in connection with the collection of such award or payment.

7. Information Regarding the Premises. Grantor shall deliver to Grantee, at any time within thirty (30) days after notice and demand by Grantee, but not more frequently than once per month, (a) a statement in such reasonable detail as Grantee may request, certified by Grantor, of the leases, if any, relating to the Premises, and (b) a statement in such reasonable detail as Grantee may request, certified by Grantor, of the income from and expenses of any one or more of the following: (i) the conduct of any business on the Premises, (ii) the operation of the Premises, or (iii) the leasing of the Premises or any part thereof, for the last twelve (12)-month calendar period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases for the audit and verification of any such statement.

8. Events of Default. Each of the following events shall constitute an "Event of Default" under this deed:

(a) Should Borrower fail to pay the Secured Indebtedness or any part thereof, when and as the same shall become due and payable;

(b) should any warranty or representation of Grantor herein contained or should any warranty or representation of Borrower contained in the Note or should any warranty or representation of Grantor or Borrower contained in any instrument, transfer, certificate, statement, conveyance, or assignment given with respect to the Secured Indebtedness prove untrue or misleading in any material respect;

(c) Should the Premises be subject to actual or threatened waste or any part thereof be removed, demolished, or materially altered so that the value of the Premises be diminished, except as provided for in Article 6 herein;

(d) should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or against the Premises and not be removed by payment or bond within fifteen (15) days from date of recording;

(e) Should a third party successfully assert the priority of a lien, security interest, or security deed over that of this deed;



(f) should Borrower, Grantor or any guarantor of the Secured Indebtedness or portion thereof (each a "Guarantor") make any assignment for the benefit of creditors, or should a receiver, liquidator, or trustee of Borrower, Grantor, any Guarantor or of any of Borrower's, Grantor's or any Guarantor's properties be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Borrower, Grantor or any Guarantor, pursuant to the federal Bankruptcy Act or any similar statute, be filed, or should Borrower, Grantor or any Guarantor be adjudicated as bankrupt or insolvent, or should Borrower or Grantor or any Guarantor in any proceeding admit its/his insolvency or inability to pay its/his debts as they fall due or should Borrower or Grantor or any Guarantor, if a corporation, be liquidated or dissolved or its articles of incorporation expire or be revoked, or, if a limited liability company, partnership or business association be dissolved or partitioned, or, if a trust be terminated or expire or should any Guarantor who is an individual die;

(g) should Borrower or Grantor fail to keep, observe, perform, carry out, and execute in every particular their respective covenants, agreements, obligations, and conditions set out in this Deed, the Note, or any other document or instrument securing or given with respect to the Secured Indebtedness, or should a default or event of default occur under the Note or any such other document or instrument;

(h) should any event occur under any instrument, deed, or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such third party the acceleration of which would materially affect Borrower's ability to pay when due any amounts owed to Grantee;

(i) should there occur any sale, transfer, leasing or encumbering of the Premises or any portion thereof, without the express prior written consent of Grantee which consent may be withheld in Grantee's sole discretion;

(j) should there occur any change in the legal or equitable ownership of a controlling interest in Grantor, or any change in the management of Grantor, without the prior written consent of Grantee, which consent may be withheld in Grantee's sole discretion;

(k) Should Grantee, in good faith, deem itself insecure regarding the payment of any of the Secured Indebtedness; or

(l) Any Guarantor repudiates or attempts to terminate or limit his obligations to Grantee under any Guaranty.

Unless a cure period is otherwise specifically provided for herein, Grantor shall have 30 days from the occurrence of a non-monetary Event of Default in which to cure such non-monetary Event of Default provided same is reasonably susceptible to being cured in such 30 days.

9. Remedies upon Occurrence of an Event of Default. Grantee shall be entitled to exercise any one or more of the following remedies:

(a) enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and receive the rents, incomes, issues, and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to Grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Premises;

(b) pay any sums in any form or manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement, or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or other party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of interest specified in the Note, shall be a debt from Grantor to Grantee which shall be secured hereby and which shall be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim, or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument;

(c) Declare the entire Secured Indebtedness immediately due, payable, and collectible, subject to any notice provisions as provided herein, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable, and collectible;

(d) sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms, and place of such sale by publishing a notice thereof once a week for four (4) consecutive weeks (without regard to the actual number of days) in a newspaper in which sheriffs advertisements are published in said county, all other waivable notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and, said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors, or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent and attorney-in-fact to make such recitals, sale, and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title, and interest, equity of redemption, including all statutory redemption, homestead and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums, and other charges, with interest at the rate of interest specified in the Note thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and fifteen percent (15%) of the principal balance of the note for attorneys' fees and costs, and pay over any surplus to Grantor (in the event of deficiency, Borrower shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; Or

(e) With respect to the Equipment and any other personal property and fixtures in which a security interest is herein granted, to exercise any or all of the rights accruing to a secured party under the Uniform Commercial Code of the State of Georgia (O.C.G.A. §11-9-101 et seq.) and any other applicable law. Grantor shall, if Grantee requests assemble all tangible items of such personal property and make them available to Grantee at a place or places to be designated by the Grantee, which shall be reasonably convenient to the Grantor. Any notice required by law to be given by Grantee of any sale or other disposition of the Equipment may be personally delivered to the Grantor or deposited in the United States mail with postage prepaid duly addressed to the Grantor at its address last known to Grantee at least five (5) business days prior to such proposed sale or other disposition, and such shall constitute reasonable and legally sufficient notice to the Grantor of any such action.

Grantee, in any action to foreclose this deed, or upon the occurrence of any Event of Default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Premises, or both, 'without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under the deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, at the election of Grantee. the Premises or any part thereof may be sold in one parcel and as an entirety, or in such parcels, manner, or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness is paid in full.

10. <u>Waiver of Homestead Exemption Rights.</u> If an individual, Grantor, for Grantor and Grantor's family, hereby waives and renounces all homestead exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof.

11. <u>Time of the Essence.</u> Grantor agrees that where, by the terms of the conveyance made herein, or the Note or any of the other Secured Indebtedness secured hereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

12. <u>Waiver.</u> The interest of Grantee hereunder and the Secured Indebtedness secured hereby arise from a "commercial transaction" within the meaning of O.C.G.A. § 44-14-260. Accordingly, Grantor hereby expressly waives any and all rights which Grantor may have to notice prior to Grantee's seizure of any personal property which constitutes part of the Premises, whether such seizure is by writ of possession or otherwise. In addition, Grantor specifically waives any and all rights of Grantor under O.C.G.A. § 10-7-24, including any right to require Grantee to proceed against Borrower.



13. <u>Exercise of Remedies No Bar to Subsequent Exercise</u>.  Grantee shall have the right from time to time to sue for any sums, whether interest, principal, or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Borrower or Grantor, including an action of foreclosure, or any other action, for a default or defaults by Borrower or Grantor existing at the time such earlier action was commenced.

14. <u>Remedies Cumulative</u>.  The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct, and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others; all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

15. <u>Notices</u>.  Except as otherwise provided in Article 9(e) hereof, every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by first class mail, postage prepaid (a) addressed to such person or persons, or their heirs or successors, at his, their, or its address last known to Grantee or (b) addressed to the street address of the Premises hereby conveyed, said notice so mailed being deemed given on the third day after the notice is mailed, or if earlier, on the date received by the addressee.

16. <u>No Waiver of Future Compliance</u>.  Any indulgence or departure at any time by Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by Borrower or Grantor.

17. <u>Miscellaneous</u>.  The words "Grantor" and "Grantee" whenever used herein shall include all heirs, executors, administrators, legal representatives, successors, and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement and obligation of Grantor shall be and mean the several as well as joint undertaking of each of them.

18. <u>Information Regarding Security Interest</u>.  For the purposes of complying with the Uniform Commercial Code, the parties agree that the respective addresses of Grantor, as Debtor, and Grantee, as Secured Party, are as follows:

Debtor:      Judy Kersten
             22 Robinson Street
             Newnan, Georgia 30263

Secured Party:  PACES FUNDING, LLC
                3015-B PIEDMONT ROAD
                ATLANTA, GEORGIA 30305

19. <u>Special Waivers</u>.  GRANTOR EXPRESSLY: (a) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN IN THIS DEED TO SECURE DEBT TO GRANTEE TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER OR GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED TO SECURE DEBT; (b) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED TO SECURE DEBT; (c) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED TO SECURE DEBT, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED TO SECURE DEBT AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR, AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING SAID DEED TO SECURE DEBT; (d) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY, AND WILLINGLY BY GRANTOR; AND (e) AGREES THAT GRANTOR'S



RIGHT TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED BY THIS DEED TO SECURE DEBT AND NO OTHER.

20. Environmental Matters

(a) For the purposes of this Article, "Hazardous Substance" shall mean any substance which is a hazardous substance as defined in CERCLA, or any other substance or material defined, designated, classified or considered as hazardous or toxic waste, hazardous or toxic material, or a hazardous, toxic, radioactive or dangerous substance under any Environmental Requirement.

"Environmental Activity" shall mean any actual, proposed or threatened use, storage, holding, existence, release, emission, discharge, generation, processing, abatement, removal, disposition, handling or transportation of any Hazardous Substance from, to, upon, in, under or above the Premises or otherwise relating to the Premises or the use of the Premises or any other activity or occurrence that causes or would cause any such event to exist.

"Environmental Requirements" shall mean all Superfund or Super Lien laws relating to any Hazardous Substance or Environmental Activity, and all other present and future federal, state and local laws, statutes, authorizations, judgments, decrees, concessions, grants, franchises, agreements, ordinances, codes, rules, regulations, orders and other governmental restrictions and requirements regulating, relating to or imposing liability or a standard of conduct concerning the environment or any Hazardous Substances or Environmental Activity including, without limitation, the following, as the same may be amended from time to time, and all regulations promulgated thereunder or in connection therewith:

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §9601 et seq. ("CERCLA"); Resource Conservation and Recovery Act of 1976,42 U.S.C. §6901 et seq. as amended by the Hazardous and Solid Waste Amendments of 1984,42 U.S.C. §6901 et seq. ("RCRA"); Clean Air Act, 42 U.S.C. § Water Pollution Control Act (commonly referred to as the Clean Water Act), 33 U.S.C. §1251 et seq. Federal Insecticide, Fungicide, and Rodenticide Act, as amended by the Federal Environmental Pesticide Control Act of 1972 and by the Federal Pesticide Act of 1978, 7 U.S.C. §136 et seq. Toxic Substances Control Act, 15 U.S.C. §2601 et seq.; Safe Drinking Water Act, 42 U.S.C. §300(f) et and Georgia Underground Storage Tank Act, O.C.G.A. §12-3-1 et seq.

(b) Grantor certifies, represents and warrants to Grantee that: (i) Grantor and the Premises are in compliance in all material respects with all applicable Environmental Requirements; (ii) no investigations, inquiries, orders, hearings, actions or other proceedings by or before any governmental agency are pending or, to the best knowledge of the Grantor, threatened in connection with any Environmental Activity or alleged Environmental Activity; (iii) Grantor has no knowledge of the presence of any Hazardous Substances upon the Premises; (iv) Grantor has no knowledge of any facts or circumstances existing upon, in, under or above the Premises or relating to the Premises which may violate any applicable Environmental Requirement; (v) the use of the Premises for its intended purpose will not result in any Environmental Activity in violation of any applicable Environmental Requirements; (vi) Grantor has not engaged in any Environmental Activity and, to the best knowledge of the Grantor, no Environmental Activity has otherwise occurred, and no notice, order, directive, complaint or other communication, written or oral, has been made or issued by any governmental agency or other person or entity alleging the occurrence of any Environmental Activity in violation of any Environmental Requirements; (vii) Grantor has obtained and will at all times continue to obtain and maintain all licenses, permits or other governmental or regulatory approvals or consents, if any, necessary to comply with all Environmental Requirements relating to the Premises, and Grantor is and shall continue at all times to be in compliance with said licenses, permits, approvals or consents; and (viii) Grantor shall at all times, at its sole expense, comply in all material respects with all applicable Environmental Requirements relating to the Premises and the use thereof and will not engage in or otherwise permit the occurrence of any Environmental Act in violation of any applicable Environmental Requirement.

(c) Grantor hereby grants to Grantee an easement over the real property constituting a part of the Premises for the purpose of inspecting said property for compliance with Environmental Requirements, said easement to include the right of Grantee to perform any inspections, tests, soil samples and/or other investigations of said property to determine the environmental conditions thereof at any time or times as shall be determined by Grantee (such inspections or other investigations to be coordinated with Grantor and performed at such times so as not to interfere unreasonably with any business operations of the Grantor



thereon). Said easement shall continue in existence so long as any amount of the Secured Indebtedness shall remain outstanding. Nothing contained herein shall be deemed to impose any obligation whatsoever upon Grantee to perform any such inspections or other investigations of said property.

(d) Grantor shall indemnify and hold Grantee harmless from and against any and all claims, demands, damages, judgments, liabilities, injuries, litigation and other proceedings and costs and expenses (including reasonable attorneys' fees and disbursements) which accrue against or are incurred by Grantee and arise directly or indirectly from or out of or in any way connected with (i) the failure of any representation or warranty contained in this Article 20 to be true and correct in all respects; (ii) the presence of any Hazardous Substance upon the Premises; or (iii) the occurrence of any Environmental Activity or any failure of Grantor or any other person or entity to comply with all applicable Environment Requirements relating to the Premises.

21. Subrogation. Grantor and Grantee agree that Grantee shall be subrogated to the claims and liens of all parties whose claims and liens against the Premises are discharged or paid with the proceeds of the Note secured hereby.

22. Binding Effect. This deed shall be binding upon and inure to the benefit of Grantor and Grantee and their respective heirs, personal representatives, successors and assigns.

23. Applicable Law. This deed shall be governed and construed in accordance with the laws of the State of Georgia.

IN WITNESS WHEREOF, this deed has been duly executed, sealed and delivered by Grantor the day and year first above written.

GRANTOR:

_Judy Kersten_ (SEAL)
Judy Kersten

Signed, sealed and delivered,

In the presence of:

_____
Unofficial Witness

_____
Notary Public
My commission expires:

[NOTARY SEAL]

DAVID PERRIE
My Commission Expires
NOTARY PUBLIC
05-10-2024
FULTON COUNTY, GEORGIA

# 1-4 FAMILY RIDER
### Assignment of Rents

This 1-4 Family Rider is made this September 9, 2022, and is incorporated into and shall be deemed to amend
and supplement the Deed to Secure Debt and Security Instrument (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

### PACES FUNDING, LLC (the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

**924 Peachtree Battle Avenue NW, Atlanta, Georgia 30327**

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, bu not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor covering, all of which, including the replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.**

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the requirement concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to center upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

**Borrower:**

_____ (SEAL)
Judy Kersten

# BALLOON RIDER

THIS BALLOON RIDER is made on September 9, 2022, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to Paces Funding, LLC ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**924 Peachtree Battle Avenue NW, Atlanta, Georgia 30327**

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand Lender may transfer the Note, Security Instrument, and this Rider. Lender or anyone who takes the Note, the Security Instrument, and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

At the Maturity Date of the Note and Security Instrument (the "Maturity Date"), I understand that the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

Borrower:

_____ (SEAL)
Judy Kersten

GRANTOR:          Judy Kersten

LENDER:           PACES FUNDING, LLC

DATE OF SECURITY DEED:    September 9, 2022

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:

(1)   ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF SAID DEED TO SECURE DEBT; (2) WAIVES ANY AND ALL RIGHTS GIVEN UNDER THE PROVISIONS OF SAID DEED TO SECURE DEBT; (3) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN SAID DEED TO SECURE DEBT; (4) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (5) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (6) AGREES THAT GRANTOR'S RIGHT TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED BY THIS DEED AND NO OTHER; AND (7) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THIS DEED TO SECURE DEBT.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

_____ (SEAL)
Judy Kersten

By:_____ (SEAL)

_____

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgment and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me
on the date set forth above.

_____
Notary Public

EXHIBIT "A"
LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND
LOTS 155 AND 184 OF THE 17TH DISTRICT, FULTON COUNTY,
GEORGIA, BEING ALL OF LOT 12, PROPERTY OF CORNELIUS V.
PORTIO, AS PER PLAT RECORDED IN PLAT BOOK 63, PAGE 42, FULTON
COUNTY, GEORGIA RECORDS. WHICH PLAT IS HEREBY REFERRED TO
AND MADE A PART OF THIS DESCRIPTION.

MORE COMMONLY KNOWN AS 924 PEACHTREE BATTLE AVENUE
NORTHWEST, ATLANTA, GEORGIA 30327.

PARCEL NO. 17 -0184-0002-053-9

SUBJECT TO ANY AND ALL EASEMENTS AND RESTRICTIONS OF
RECORD.

