UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 24-53397-JRS |
| | : | |
| JUDITH BOURDO KERSTEN. | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |
| | : | |
| _____ | : | _____ |
| | : | |
| S. GREGORY HAYS, | : | |
| Chapter 7 Trustee for the estate of | : | |
| Judith Bourdo Kersten, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | ADV. PRO. NO. _____ |
| | : | |
| PACES FUNDING, LLC, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## COMPLAINT

S. Gregory Hays, Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Judith Bourdo Kersten ("**Debtor**") files this *Complaint* (the "**Complaint**") against Paces Funding, LLC ("**Paces**" or "**Defendant**"), and shows the Court as follows:

### Jurisdiction and Venue

1.      This adversary proceeding is initiated pursuant to Rule 7001(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544, 550, and 551.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a), as this adversary proceeding arises in and relates to the Chapter 7 bankruptcy case *In re Judith Bourdo*

02877995-1

*Kersten,* Case No. 24-53397-JRS (the "**Bankruptcy Case**"), pending in the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division.

3.    This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § § 157(b)(2) (A), (K), and (O).

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

5.    Trustee consents to the entry of final orders or judgments by the Bankruptcy Court pursuant to Bankruptcy Rule 7008 of the Federal Rules of Bankruptcy Procedure.

6.    Defendant is not an insured depository institution.

7.    Defendant may be served pursuant to Rule 7004(h) of the Federal Rules of Bankruptcy Procedure by U.S. First Class Mail on an officer, a managing or general agent, or any other agent authorized by appointment for the Defendant.

### Statement of Facts

#### *a. General Background*

8.    Debtor filed a voluntary petition (the "**Petition**") for relief under Chapter 13 of Title 11 of the United States Code on April 1, 2024 (the "**Petition Date**"), initiating the Bankruptcy Case, and the Bankruptcy Case converted to Chapter 7 on May 3, 2024.

9.    Trustee was thereafter appointed to the Bankruptcy Case as the interim Chapter 7 trustee under 11 U.S.C. § 701(a)(1).

10.    At the conclusion of the meeting of creditors, conducted in accordance with 11 U.S.C. § 341(a) on July 10, 2024, Trustee became the permanent Chapter 7 Trustee under 11 U.S.C. § 702(d).

02877995-1

### b. The Property

11.     By virtue of that certain *Executor's Deed* dated September 9, 2022, in which "Judith Kersten" was named as the grantee (the "**Deed**"), Debtor became the sole owner of that certain real property known generally as 924 Peachtree Battle Avenue, NW, Atlanta, Fulton County, Georgia 30327 (the "**Property**").  The Deed was recorded in the real property records of the Clerk of the Superior Court of Fulton County, Georgia (the "**Real Estate Records**") on September 28, 2022 at page 62 of Deed book 66178.  A true and correct copy of the Deed is attached hereto and incorporated herein by reference as Exhibit "A."

### c. The Transfers

12.     Debtor executed that certain *Deed to Secure Debt and Security Agreement* (the "**Security Deed**") dated September 9, 2022, in favor of Paces, conveying the Property to secure a debt in the original principal amount of $1,140,000.00 (the "**First Transfer**"), in which "Judy Kersten" was named as grantor. The Security Deed was recorded on the Real Estate Records on September 28, 2022 (the "**Second Transfer**," and together with the First Transfer, the "**Transfers**"), at pages 63-76 of Deed Book 66178. A true and correct copy of the Security Deed is attached hereto and incorporated herein by reference as Exhibit "B."

13.     The execution of the Security Deed by Debtor was not properly attested as required by O.C.G.A. §§ 44-5-30 and 44-14-61, because the maker of the security deed was improperly named as "Judy Kersten" instead of the Debtor's actual name (and the recorded owner of the Property), "Judith Kersten."

14.     The attesting officer to the Deed could not have verified the maker of the Deed's identity because the Debtor's name is "Judith Kersten," as shown on her government issued photo identification that was presented to Trustee prior to the Debtor's meeting of creditors.

02877995-1

15.     The Security Deed was not in recordable form as required by O.C.G.A. §§ 44-5-30 and 44-14-61.

16.     Additionally, a search through the Real Estate Records using the Debtor's correct name (and the recorded owner of the Property) does not reveal the Security Deed.

17.     As a result, the Security Deed, even though recorded, did not provide actual or constructive notice to a *bona fide* purchaser of the Property.

## COUNT I

### Claim to Avoid the Transfers
### Under 11 U.S.C. Section 544(a)(3)

18.     Plaintiff hereby re-alleges and incorporates paragraphs 1 through 17 of this Complaint as if the same were set forth verbatim herein.

19.     The Security Deed is patently defective because it uses an incorrect name for the grantee and the maker of the Security Deed.  Accordingly, the recorded owner of the Property did not make the Transfers.

20.     Because of the patent defect, the Security Deed did not provide Trustee, in his role as a hypothetical *bona* fide purchaser, notice of any security interest.  *See Wells Fargo Bank, N.A. v. Gordon,* 292 Ga. 474 (2013); *In re Codrington*, 716 F.3d 1344 (11th Cir. 2013); *Gordon v. U.S. Bank Nat'l Ass'n (In re Hagler)*, 429 B.R. 42 (Bankr. N.D. Ga. 2009) (Massey, J.); *U.S. Bank Nat'l Ass'n v. Gordon,* 289 Ga. 12, 17 (2011).

21.     Georgia courts have found that errors which cause a security instrument to be seriously misleading (such as failing to sufficiently provide the name of the Debtor) will render a security instrument unperfected.  *See Receivables Purchasing Co. v. R & R Directional Drilling, L.L.C.*, 263 Ga. App. 649, 652, 588 S.E.2d 831, 833 (Ga Ct. App. 2003) (finding that a creditor filing a security instrument acts at its own peril if the instrument is filed under an incorrect name,

where it was undisputed that a search through the appropriate records using the correct name did not reveal a financing statement); *Scarver v. Silverline Servs. (In re Wastetech, LLC)*, 605 B.R. 264, 272-74 (Bankr. N.D. Ga. 2019) (Basier, J.) (granting summary judgment to a Chapter 7 trustee seeking to avoid a lien where a recorded financing statement was inconsistent with a debtor's legal name, as a search of Georgia's Superior Cour Clerks' Cooperative Authority's Lien records for debtor's correct name would not have disclosed the financing statement).

22.    Plaintiff, in his position as a hypothetical *bona fide* purchaser of real property, has a claim in the Property that is superior to the claim of Defendant to the Property, such that Trustee may avoid the Transfers under 11 U.S.C. § 544(a)(3).

## COUNT II

### Claim to Determine the Validity, Extent, or Priority of Liens

23.    Plaintiff hereby re-alleges and incorporates paragraphs 1 through 22 of this Complaint as if the same were set forth verbatim herein.

24.    Plaintiff seeks a determination that the Security Deed lien of Defendant in the Property is unperfected, unenforceable, and invalid, and that any timely filed claim of Defendant can only be allowed as a non-priority unsecured claim.

## COUNT III

### Claim of Recovery from Defendant
### Under 11 U.S.C. Section 550(a)

25.    Plaintiff hereby re-alleges and incorporates paragraphs 1 through 24 of this Complaint as if the same were set forth verbatim herein.

26.    Defendant is the initial transferee of an interest in the Property from Debtor.

27.    Alternatively, Defendant is the immediate or mediate transferee of an interest in the Property from Debtor.

02877995-1

28.    Plaintiff is entitled to recover from Defendant its interest in the Property, or other appropriate relief, under 11 U.S.C. § 550.

## COUNT IV

### Claim for Preservation of Avoided Transfers
### Under 11 U.S.C. Section 551

29.    Plaintiff hereby re-alleges and incorporates paragraphs 1 through 28 of this Complaint as if the same were set forth verbatim herein.

30.    The avoided Transfers are preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

WHEREFORE, Trustee prays the Court enter a judgment in favor of Trustee and against Defendant:

a)    Avoiding the Transfers under 11 U.S.C. § 544(a)(3), pursuant to Count I of the Complaint;

b)    Establishing the Security Deed lien of Defendant in the Property is unperfected, unenforceable, and invalid, and that any timely-filed claim of Defendant will only be allowed as a single non-priority unsecured claim, pursuant to Count II of the Complaint;

c)    Ordering that Plaintiff is entitled to recover from Defendant its interest in the Property as to the Bankruptcy Estate's interest, or the value of same, to Trustee under 11 U.S.C. § 550, pursuant to Court III of the Complaint;

02877995-1

d)      Preserving the Transfers for the benefit of the Bankruptcy Estate under 11 U.S.C.

        § 551, pursuant to Count IV of the Complaint; and

e)      Granting any other relief the Court finds just and proper.


                        TAYLOR ENGLISH DUMA, LLP
                        *Attorneys for Plaintiff*


                        By:*/s/   Jason L Pettie*
                                Jason L. Pettie
                                Georgia Bar No. 574783
                                Neil C. Gordon
                                Ga. Bar No. 302387

1600 Parkwood Circle SE, Suite 200
Atlanta, Georgia 30339
jpettie@taylorenglish.com
P: (678) 336-7226

02877995-1

**EXHIBIT "A" FOLLOWS**

02877995-1

Please Return To:
100 Galleria Parkway, Suite 1170
Atlanta, GA 30339
File # 220910C
Parcel ID # 17 0184-0002-053-9

Deed Book 66178 Pg 62
Filed and Recorded Sep-28-2022 08:37am
2022-0308784
Real Estate Transfer Tax $853.50
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

STATE OF GEORGIA
COUNTY OF COBB

## EXECUTOR'S DEED

THIS INDENTURE, made as of ~~July~~ *September* 9 , 2022 between SARAH ALMAND NORTHCUTT, AS EXECUTOR OF THE ESTATE OF FRANCES HENRY ALMAND, late of the State of Georgia and the County of Fulton, deceased, and SARAH ALMAND NORTHCUTT, AS EXECUTOR OF THE ESTATE OF RICHARD HENRY ALMAND, JR., late of the State of Georgia and the County of Fulton, deceased, of the First Part (hereinafter referred to as "Grantor") and JUDITH KERSTEN (hereinafter referred to as "Grantee") (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor (acting under and by virtue of the power and authority contained in the wills, the same having been duly probated and recorded in the Probate Court of Fulton County, Georgia), for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration in hand paid, at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, by these presents does hereby grant, bargain, sell, alien, convey and confirm unto said Grantee the following described real property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 155 AND 184 OF THE 17TH DISTRICT, FULTON COUNTY, GEORGIA, BEING ALL OF LOT 12, PROPERTY OF CORNELIUS V. PORTIO, AS PER PLAT RECORDED IN PLAT BOOK 63, PAGE 42, FULTON COUNTY, GEORGIA RECORDS. WHICH PLAT IS HEREBY REFERRED TO AND MADE A PART OF THIS DESCRIPTION.

MORE COMMONLY KNOWN AS 924 PEACHTREE BATTLE AVENUE NORTHWEST, ATLANTA, GEORGIA 30327.

SUBJECT TO ANY AND ALL EASEMENTS AND RESTRICTIONS OF RECORD.

TO HAVE AND TO HOLD said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of said Grantee forever in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the said deceased.

IN WITNESS WHEREOF, Grantor has signed and sealed this deed, the day and year first above written.

Signed, sealed and delivered in the presence of:

*Tracy Arthur*                   *Sarah Almand Northcutt, as executor of the Estate of*
Witness                                                    (Seal) *Frances Henry Almand*
                                        SARAH ALMAND NORTHCUTT, AS
                                        EXECUTOR OF THE ESTATE OF FRANCES
                                        HENRY ALMAND

*Breona J. Ward*           *Sarah Almand Northcutt, as executor of the Estate of*
Notary Public  11/01/24                              *Richard Henry Almand, Jr.*
*BREONA WARD*                                            (Seal)
                                        SARAH ALMAND NORTHCUTT, AS
                                        EXECUTOR OF THE ESTATE OF RICHARD
                                        HENRY ALMAND, JR.

[Notary Seal:]
BREONA J. WARD
NOTARY
EXPIRES
GEORGIA
11/01/2024
PUBLIC
CLAYTON COUNTY

**EXHIBIT "B" FOLLOWS**

02877995-1

After Recording send to:
Perrie & Associates, LLC
100 Galleria Parkway
Suite 1170
Atlanta, GA 30339

File # 220910C

TAX ID: 17-0184-0002-053-9

Deed Book 66178 Pg 63
Filed and Recorded Sep-28-2022 08:37am
2022-0308785
Georgia Intangible Tax Paid $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

AFTER RECORDING PLEASE RETURN TO:
BAGWELL & ASSOCIATES, PC
2931 PIEDMONT ROAD, SUITE C
ATLANTA, GEORGIA 30305

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

### (Short term – intangible tax not due)

STATE OF GEORGIA

COUNTY OF FULTON

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT ("Deed"), is made **September 9, 2022** by and between

**Judy Kersten**

Whose mailing address is **22 Robinson Street, Newnan, Georgia 30263** ("Grantor"), and

**PACES FUNDING, LLC,**

a Georgia limited liability company, whose mailing address is 3015-B PIEDMONT RD, ATLANTA, GA 30305 ("Grantee");

### WITNESSETH THAT

WHEREAS, the Grantor is justly indebted to Grantee in the sum of $1,140,000.00 in lawful money of the United States of America, and has agreed to pay the same, with interest thereon, according to the terms of a certain promissory note given by Borrower to Grantee to evidence said indebtedness, bearing even date herewith, having a **maturity date of September 9, 2023**, such note, as the same may be amended, renewed, replaced, or extended from time to time, being incorporated herein by this reference (as amended, renewed, replaced, or extended, the "Note");

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Grantor, and in order to secure the payment of the Note and the Secured Indebtedness as defined herein below, Grantor has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey, unto Grantee the following described property, to-wit:

SUBJECT PROPERTY KNOWN AS: 924 Peachtree Battle Avenue NW, Atlanta, Georgia 30327.

AND AS MORE FULLY DESCRIBED IN EXHIBIT "A" HERETO AND INCORPORATED HEREIN.

TOGETHER with all buildings, structures, and other improvements now or hereafter located on said property, or any part and parcel thereof; and

TOGETHER with all rights, title, and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber, and other emblements now or hereafter on said property or above the same or any part or parcel thereof; and

TOGETHER with all and singular the tenements, hereditaments, easements, and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues, and profits thereof; and also all the estate, right, title, interest, claim, and demand whatsoever of Grantor of, in, and to the same and of, in, and to every part and parcel thereof; and

TOGETHER with all fittings and fixtures, whether actually or constructively attached to said property and including all attached machinery, equipment, apparatus, and all trade, domestic, and

Deed Book 66178 Pg    64

ornamental fixtures, appliances, and articles of personal property of every kind and nature whatsoever, now or hereafter located in, upon, or under said property or any part thereof and used or usable in connection with any present or future operation of said property and now owned or hereafter acquired by Grantor (hereinafter collectively called "Equipment") including, but without limiting the generality of the foregoing, all heating, air conditioning, freezing, lighting, laundry, cooking, incinerating, and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; boilers, ranges, furnaces, oil burners, or units thereof; appliances; air-cooling and air conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; dishwashers; attached cabinets; partitions; ducts and compressors; rugs and carpets; mirrors; mantles; draperies; furniture and furnishings; all building materials, supplies, and equipment now or hereafter delivered to said property and intended to be installed therein; all additions to and renewals or replacements of all of the foregoing; and all proceeds and profits of all of the foregoing; and

TOGETHER with any and all rents which are now due or may hereafter become due by reason of the renting or leasing of the property, the improvements thereon, and Equipment; and

TOGETHER with any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in the value of, the property, to the extent of all amounts which may be secured by this deed at the date of receipt of any such award or payment by Grantee and of attorneys' fees and costs as set forth herein, and disbursements incurred by Grantee in connection with the collection of such award or payment.

TO HAVE AND TO HOLD all the aforesaid property, property rights, contract rights, Equipment, and claims (all of which are collectively referred to herein as the "Premises") to the use, benefit, and behoof of Grantee, forever, in FEE SIMPLE.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be expressly provided in Schedule B Section 2 of the lender's title policy issued in connection herewith; and Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

By execution hereof by the Grantor and acceptance hereof by the Grantee, the parties hereto hereby affirmatively state that they intend to create and establish a perpetual or indefinite security interest in favor of Grantee in the Premises conveyed hereby pursuant to Official Code of Georgia Annotated ("O.C.G.A.") § 44-14-80(a)(1) or § 44-14-80(a)(2), as applicable, and agree that title to the Premises conveyed hereby shall not revert to Grantor until the expiration of the longest period of time permitted under whichever of said subsections as shall be applicable to this conveyance, or if later, the date determined in accordance with O.C.G.A. § 44-14-80(b) or § 44-14-80(c), as applicable, if any portion or all of the indebtedness secured hereby is extended or renewed.

This instrument is a deed and security agreement passing legal title pursuant to the laws of the State of Georgia governing conveyances of property to secure debt and security agreements and is not a mortgage.

This deed is made and intended to secure the payment of the indebtedness of Borrower to Grantee evidenced by the Note in accordance with the terms thereof, together with all additional sums advanced and expenses incurred by Grantee for insuring, preserving or otherwise protecting the Premises and its value and any other sums advanced and expenses incurred by Grantee under the terms of this deed (including advances for payment of taxes and assessments on the Premises), and all expenses incident to the collection of the indebtedness secured by this deed (all of which are collectively referred to herein as the "Secured Indebtedness")

Grantor covenants and agrees as follows:

1. Payment of Secured Indebtedness. Grantor, if also Borrower, shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note or any other instrument or document pertaining to said Secured Indebtedness as provided.

2. Taxes and Insurance Premiums. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed, or made against the Premises, this instrument, or the Secured Indebtedness or any interest of Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for title insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall promptly deliver to Grantee receipts showing

Deed Book 66178 Pg 65

payment in full of all of the above items. Upon notification from Grantee, Grantor shall pay to Grantee (together with and in addition to the payments of principal and interest payable under the terms of the Note secured hereby if Grantor also is Borrower), on the installment-paying dates of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents, and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. In the event Grantee has required Grantor to pay to Grantee amounts estimated to be necessary to pay said taxes, assessments, insurance premiums and the like as provided hereinabove, then Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums, and rents next due, and Grantee shall pay said charges up to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall become a debt due by Grantor to Grantee, shall bear interest at the rate of interest specified in the Note from date of advancement, and shall be immediately due and payable to Grantee upon demand by Grantee. Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

3. Insurance Requirements: Damage and Destruction

(a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, collapse, explosion, malicious mischief, riot, riot attending a strike, civil commotion, aircraft, vehicles, and smoke and such other hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding 100% of the full insurable value (replacement value) thereof and shall keep the Premises covered by public liability insurance in amounts acceptable to Grantee; all insurance herein provided for shall be in form and written by companies approved by Grantee; and, regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness (whether or not same is then due and payable) in such order of application determined by Grantee in Grantee's sole discretion, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof upon terms and conditions satisfactory to Grantee in Grantee's sole discretion, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b) Not less than ten (10) days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article 3, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by, this deed, pursuant to the provisions of this Article 3.

4. Maintenance of Premises/Lease. (a) Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all restrictive covenants, statutes, ordinances, and requirements of any governmental authority relating to the Premises and the use thereof or any part thereof. Grantor shall promptly repair, restore, replace, or rebuild any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 6 herein. No part of the Premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, equipment or other property, 'now or hereafter conveyed as security by or pursuant to this deed, shall be removed, demolished, or materially altered without the prior written consent of Grantee. Grantor shall

Deed Book 66178 Pg 66

complete, within a reasonable time, and pay for any building, structure, or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof without the express prior written consent of Grantee. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times, and access thereto shall be permitted for that purpose.

(b) Grantor shall not, without the written consent of Grantee, enter into any leases or occupancy agreements affecting the Premises other than residential tenant leases in the ordinary course of business which are subordinate to this deed and which include rents and terms comparable to similar property in the vicinity of the Premises.

5. Further Assurances. Grantor shall execute and deliver (and pay the costs of preparation and recording thereof) to Grantee and to any subsequent holder hereof from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements and assignments, so as to reaffirm, to correct, and to perfect the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this deed and extensions or modifications thereof.

6. Condemnation. Notwithstanding any taking of any property herein conveyed or agreed to be conveyed, by eminent domain, alteration of the grade of any street, or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, Borrower shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alterations, injury, or decrease in value of the Premises, as hereinafter set forth, shall be deemed 'to take effect only on the date of such receipt; and said award or payment may, in the sole discretion of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged, or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If, prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and of the reasonable attorneys' fees, costs, and disbursements incurred by Grantee in connection with the collection of such award or payment.

7. Information Regarding the Premises. Grantor shall deliver to Grantee, at any time within thirty (30) days after notice and demand by Grantee, but not more frequently than once per month, (a) a statement in such reasonable detail as Grantee may request, certified by Grantor, of the leases, if any, relating to the Premises, and (b) a statement in such reasonable detail as Grantee may request, certified by Grantor, of the income from and expenses of any one or more of the following: (i) the conduct of any business on the Premises, (ii) the operation of the Premises, or (iii) the leasing of the Premises or any part thereof, for the last twelve (12)-month calendar period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases for the audit and verification of any such statement.

8. Events of Default. Each of the following events shall constitute an "Event of Default" under this deed:

(a) Should Borrower fail to pay the Secured Indebtedness or any part thereof, when and as the same shall become due and payable;

(b) should any warranty or representation of Grantor herein contained or should any warranty or representation of Borrower contained in the Note or should any warranty or representation of Grantor or Borrower contained in any instrument, transfer, certificate, statement, conveyance, or assignment given with respect to the Secured Indebtedness prove untrue or misleading in any material respect;

(c) Should the Premises be subject to actual or threatened waste or any part thereof be removed, demolished, or materially altered so that the value of the Premises be diminished, except as provided for in Article 6 herein;

(d) should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or against the Premises and not be removed by payment or bond within fifteen (15) days from date of recording;

(e) Should a third party successfully assert the priority of a lien, security interest, or security deed over that of this deed;

Deed Book 66178 Pg 67

(f) should Borrower, Grantor or any guarantor of the Secured Indebtedness or portion thereof (each a "Guarantor") make any assignment for the benefit of creditors, or should a receiver, liquidator, or trustee of Borrower, Grantor, any Guarantor or of any of Borrower's, Grantor's or any Guarantor's properties be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Borrower, Grantor or any Guarantor, pursuant to the federal Bankruptcy Act or any similar statute, be filed, or should Borrower, Grantor or any Guarantor be adjudicated as bankrupt or insolvent, or should Borrower or Grantor or any Guarantor in any proceeding admit its/his insolvency or inability to pay its/his debts as they fall due or should Borrower or Grantor or any Guarantor, if a corporation, be liquidated or dissolved or its articles of incorporation expire or be revoked, or, if a limited liability company, partnership or business association be dissolved or partitioned, or, if a trust be terminated or expire or should any Guarantor who is an individual die;

(g) should Borrower or Grantor fail to keep, observe, perform, carry out, and execute in every particular their respective covenants, agreements, obligations, and conditions set out in this Deed, the Note, or any other document or instrument securing or given with respect to the Secured Indebtedness, or should a default or event of default occur under the Note or any such other document or instrument;

(h) should any event occur under any instrument, deed, or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such third party the acceleration of which would materially affect Borrower's ability to pay when due any amounts owed to Grantee;

(i) should there occur any sale, transfer, leasing or encumbering of the Premises or any portion thereof, without the express prior written consent of Grantee which consent may be withheld in Grantee's sole discretion;

(j) should there occur any change in the legal or equitable ownership of a controlling interest in Grantor, or any change in the management of Grantor, without the prior written consent of Grantee, which consent may be withheld in Grantee's sole discretion;

(k) Should Grantee, in good faith, deem itself insecure regarding the payment of any of the Secured Indebtedness; or

(l) Any Guarantor repudiates or attempts to terminate or limit his obligations to Grantee under any Guaranty.

Unless a cure period is otherwise specifically provided for herein, Grantor shall have 30 days from the occurrence of a non-monetary Event of Default in which to cure such non-monetary Event of Default provided same is reasonably susceptible to being cured in such 30 days.

9. Remedies upon Occurrence of an Event of Default. Grantee shall be entitled to exercise any one or more of the following remedies:

(a) enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and receive the rents, incomes, issues, and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to Grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Premises;

(b) pay any sums in any form or manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement, or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or other party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of interest specified in the Note, shall be a debt from Grantor to Grantee which shall be secured hereby and which shall be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim, or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument;

(c) Declare the entire Secured Indebtedness immediately due, payable, and collectible, subject to any notice provisions as provided herein, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable, and collectible;

Deed Book 66178 Pg    68

(d) sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms, and place of such sale by publishing a notice thereof once a week for four (4) consecutive weeks (without regard to the actual number of days) in a newspaper in which sheriffs advertisements are published in said county, all other waivable notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and, said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors, or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent and attorney-in-fact to make such recitals, sale, and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title, and interest, equity of redemption, including all statutory redemption, homestead and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums, and other charges, with interest at the rate of interest specified in the Note thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and fifteen percent (15%) of the principal balance of the note for attorneys' fees and costs, and pay over any surplus to Grantor (in the event of deficiency, Borrower shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; Or

(e) With respect to the Equipment and any other personal property and fixtures in which a security interest is herein granted, to exercise any or all of the rights accruing to a secured party under the Uniform Commercial Code of the State of Georgia (O.C.G.A. §11-9-101 et seq.) and any other applicable law. Grantor shall, if Grantee requests assemble all tangible items of such personal property and make them available to Grantee at a place or places to be designated by the Grantee, which shall be reasonably convenient to the Grantor. Any notice required by law to be given by Grantee of any sale or other disposition of the Equipment may be personally delivered to the Grantor or deposited in the United States mail with postage prepaid duly addressed to the Grantor at its address last known to Grantee at least five (5) business days prior to such proposed sale or other disposition, and such shall constitute reasonable and legally sufficient notice to the Grantor of any such action.

Grantee, in any action to foreclose this deed, or upon the occurrence of any Event of Default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Premises, or both, 'without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under the deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, at the election of Grantee, the Premises or any part thereof may be sold in one parcel and as an entirety, or in such parcels, manner, or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness is paid in full.

10. Waiver of Homestead Exemption Rights. If an individual, Grantor, for Grantor and Grantor's family, hereby waives and renounces all homestead exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof.

11. Time of the Essence. Grantor agrees that where, by the terms of the conveyance made herein, or the Note or any of the other Secured Indebtedness secured hereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

12. Waiver. The interest of Grantee hereunder and the Secured Indebtedness secured hereby arise from a "commercial transaction" within the meaning of O.C.G.A. § 44-14-260. Accordingly, Grantor hereby expressly waives any and all rights which Grantor may have to notice prior to Grantee's seizure of any personal property which constitutes part of the Premises, whether such seizure is by writ of possession or otherwise. In addition, Grantor specifically waives any and all rights of Grantor under O.C.G.A. § 10-7-24, including any right to require Grantee to proceed against Borrower.

Deed Book 66178 Pg 69

13. Exercise of Remedies No Bar to Subsequent Exercise. Grantee shall have the right from time to time to sue for any sums, whether interest, principal, or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Borrower or Grantor, including an action of foreclosure, or any other action, for a default or defaults by Borrower or Grantor existing at the time such earlier action was commenced.

14. Remedies Cumulative. The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct, and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others; all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

15. Notices. Except as otherwise provided in Article 9(e) hereof, every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by first class mail, postage prepaid (a) addressed to such person or persons, or their heirs or successors, at his, their, or its address last known to Grantee or (b) addressed to the street address of the Premises hereby conveyed, said notice so mailed being deemed given on the third day after the notice is mailed, or if earlier, on the date received by the addressee.

16. No Waiver of Future Compliance. Any indulgence or departure at any time by Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by Borrower or Grantor.

17. Miscellaneous. The words "Grantor" and "Grantee" whenever used herein shall include all heirs, executors, administrators, legal representatives, successors, and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement and obligation of Grantor shall be and mean the several as well as joint undertaking of each of them.

18. Information Regarding Security Interest. For the purposes of complying with the Uniform Commercial Code, the parties agree that the respective addresses of Grantor, as Debtor, and Grantee, as Secured Party, are as follows:

Debtor:          Judy Kersten
                 22 Robinson Street
                 Newnan, Georgia 30263

Secured Party:   PACES FUNDING, LLC
                 3015-B PIEDMONT ROAD
                 ATLANTA, GEORGIA 30305

19. Special Waivers. GRANTOR EXPRESSLY: (a) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN IN THIS DEED TO SECURE DEBT TO GRANTEE TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER OR GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED TO SECURE DEBT; (b) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED TO SECURE DEBT; (c) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED TO SECURE DEBT, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED TO SECURE DEBT AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR, AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING SAID DEED TO SECURE DEBT; (d) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY, AND WILLINGLY BY GRANTOR; AND (e) AGREES THAT GRANTOR'S

Deed Book 66178 Pg 70

RIGHT TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED BY THIS DEED TO SECURE DEBT AND NO OTHER.

20. Environmental Matters

(a) For the purposes of this Article, "Hazardous Substance" shall mean any substance which is a hazardous substance as defined in CERCLA, or any other substance or material defined, designated, classified or considered as hazardous or toxic waste, hazardous or toxic material, or a hazardous, toxic, radioactive or dangerous substance under any Environmental Requirement.

"Environmental Activity" shall mean any actual, proposed or threatened use, storage, holding, existence, release, emission, discharge, generation, processing, abatement, removal, disposition, handling or transportation of any Hazardous Substance from, to, upon, in, under or above the Premises or otherwise relating to the Premises or the use of the Premises or any other activity or occurrence that causes or would cause any such event to exist.

"Environmental Requirements" shall mean all Superfund or Super Lien laws relating to any Hazardous Substance or Environmental Activity, and all other present and future federal, state and local laws, statutes, authorizations, judgments, decrees, concessions, grants, franchises, agreements, ordinances, codes, rules, regulations, orders and other governmental restrictions and requirements regulating, relating to or imposing liability or a standard of conduct concerning the environment or any Hazardous Substances or Environmental Activity including, without limitation, the following, as the same may be amended from time to time, and all regulations promulgated thereunder or in connection therewith:

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §9601 et seq. ("CERCLA"); Resource Conservation and Recovery Act of 1976,42 U.S.C. §6901 et seq. as amended by the Hazardous and Solid Waste Amendments of 1984,42 U.S.C. §6901 et seq. ("RCRA"); Clean Air Act, 42 U.S.C. § Water Pollution Control Act (commonly referred to as the Clean Water Act), 33 U.S.C. §1251 et seq. Federal Insecticide, Fungicide, and Rodenticide Act, as amended by the Federal Environmental Pesticide Control Act of 1972 and by the Federal Pesticide Act of 1978, 7 U.S.C. §136 et seq. Toxic Substances Control Act, 15 U.S.C. §2601 et seq.; Safe Drinking Water Act, 42 U.S.C. §300(f) et and Georgia Underground Storage Tank Act, O.C.G.A. §12-3-1 et seq.

(b) Grantor certifies, represents and warrants to Grantee that: (i) Grantor and the Premises are in compliance in all material respects with all applicable Environmental Requirements; (ii) no investigations, inquiries, orders, hearings, actions or other proceedings by or before any governmental agency are pending or, to the best knowledge of the Grantor, threatened in connection with any Environmental Activity or alleged Environmental Activity; (iii) Grantor has no knowledge of the presence of any Hazardous Substances upon the Premises; (iv) Grantor has no knowledge of any facts or circumstances existing upon, in, under or above the Premises or relating to the Premises which may violate any applicable Environmental Requirement; (v) the use of the Premises for its intended purpose will not result in any Environmental Activity in violation of any applicable Environmental Requirements; (vi) Grantor has not engaged in any Environmental Activity and, to the best knowledge of the Grantor, no Environmental Activity has otherwise occurred, and no notice, order, directive, complaint or other communication, written or oral, has been made or issued by any governmental agency or other person or entity alleging the occurrence of any Environmental Activity in violation of any Environmental Requirements; (vii) Grantor has obtained and will at all times continue to obtain and maintain all licenses, permits or other governmental or regulatory approvals or consents, if any, necessary to comply with all Environmental Requirements relating to the Premises, and Grantor is and shall continue at all times to be in compliance with said licenses, permits, approvals or consents; and (viii) Grantor shall at all times, at its sole expense, comply in all material respects with all applicable Environmental Requirements relating to the Premises and the use thereof and will not engage in or otherwise permit the occurrence of any Environmental Act in violation of any applicable Environmental Requirement.

(c) Grantor hereby grants to Grantee an easement over the real property constituting a part of the Premises for the purpose of inspecting said property for compliance with Environmental Requirements, said easement to include the right of Grantee to perform any inspections, tests, soil samples and/or other investigations of said property to determine the environmental conditions thereof at any time or times as shall be determined by Grantee (such inspections or other investigations to be coordinated with Grantor and performed at such times so as not to interfere unreasonably with any business operations of the Grantor



Deed Book 66178 Pg    71

thereon). Said easement shall continue in existence so long as any amount of the Secured Indebtedness shall remain outstanding. Nothing contained herein shall be deemed to impose any obligation whatsoever upon Grantee to perform any such inspections or other investigations of said property.

(d) Grantor shall indemnify and hold Grantee harmless from and against any and all claims, demands, damages, judgments, liabilities, injuries, litigation and other proceedings and costs and expenses (including reasonable attorneys' fees and disbursements) which accrue against or are incurred by Grantee and arise directly or indirectly from or out of or in any way connected with (i) the failure of any representation or warranty contained in this Article 20 to be true and correct in all respects; (ii) the presence of any Hazardous Substance upon the Premises; or (iii) the occurrence of any Environmental Activity or any failure of Grantor or any other person or entity to comply with all applicable Environment Requirements relating to the Premises.

21. Subrogation.   Grantor and Grantee agree that Grantee shall be subrogated to the claims and liens of all parties whose claims and liens against the Premises are discharged or paid with the proceeds of the Note secured hereby.

22. Binding Effect. This deed shall be binding upon and inure to the benefit of Grantor and Grantee and their respective heirs, personal representatives, successors and assigns.

23. Applicable Law. This deed shall be governed and construed in accordance with the laws of the State of Georgia.

IN WITNESS WHEREOF, this deed has been duly executed, sealed and delivered by Grantor the day and year first above written.

GRANTOR:

_____ (SEAL)
Judy Kersten

Signed, sealed and delivered,

In the presence of:

_____
Unofficial Witness

_____
Notary Public
My commission expires:

[NOTARY SEAL]

DAVID PERRIE
My Commission Expires
NOTARY PUBLIC
05-10-2024
FULTON COUNTY, GEORGIA

Deed Book 66178 Pg   72

# 1-4 FAMILY RIDER
### Assignment of Rents

This 1-4 Family Rider is made this September 9, 2022, and is incorporated into and shall be deemed to amend
and supplement the Deed to Secure Debt and Security Instrument (the "Security Instrument") of the same
date given by the undersigned (the "Borrower") to secure Borrower's Note to

## PACES FUNDING, LLC (the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

**924 Peachtree Battle Avenue NW, Atlanta, Georgia 30327**

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in the Security Instrument, the following items are added to the
Property description, and shall also constitute the Property covered by the Security Instrument: building
materials appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for the purposes of
supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods,
attached mirrors, cabinets, paneling and attached floor covering, all of which, including the replacements
and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security Instrument (or the
leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing
to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any
governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any
lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition
to the other hazards for which insurance is required.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.**

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing,
the requirement concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to
Lender all leases of the Property and all security deposits made in connection with leases of the Property.
Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to
execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean
"sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN
POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and
revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.
Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the
Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents
until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument,
and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.
This assignment of Rents constitutes an absolute assignment and not an assignment for additional security
only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by
Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security
Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

Deed Book 66178 Pg    73

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to center upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

Borrower:

_____ (SEAL)
Judy Kersten

Deed Book 66178 Pg    74

# BALLOON RIDER

THIS BALLOON RIDER is made on September 9, 2022, and is incorporated into and shall be deemed
to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument")
of the same date given by the undersigned ("Borrower") to secure Borrower's Note to Paces Funding,
LLC ("Lender") of the same date and covering the property described in the Security Instrument and
located at:

**924 Peachtree Battle Avenue NW, Atlanta, Georgia 30327**

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the
"Note Date." I understand Lender may transfer the Note, Security Instrument, and this Rider. Lender or
anyone who takes the Note, the Security Instrument, and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

At the Maturity Date of the Note and Security Instrument (the "Maturity Date"), I understand that
the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and
that I will have to repay the Note from my own resources or find a lender willing to lend me the money to
repay the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Balloon Rider.

Borrower:

_Judy Kersten_ (SEAL)
Judy Kersten

Deed Book 66178 Pg    75

GRANTOR:              Judy Kersten

LENDER:               PACES FUNDING, LLC

DATE OF SECURITY DEED:    September 9, 2022

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:

(1)  ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF SAID DEED TO SECURE DEBT; (2) WAIVES ANY AND ALL RIGHTS GIVEN UNDER THE PROVISIONS OF SAID DEED TO SECURE DEBT; (3) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN SAID DEED TO SECURE DEBT; (4) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (5) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (6) AGREES THAT GRANTOR'S RIGHT TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED BY THIS DEED AND NO OTHER; AND (7) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THIS DEED TO SECURE DEBT.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness                                    _____(SEAL)
                                                        Judy Kersten

_____
Notary Public
                                                      By:_____(SEAL)

_____

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgment and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me
on the date set forth above.

_____
Notary Public